# IN THE UNITED STATES DISTRICT COURT

# FOR THE MIDDLE DISTRICT OF ALABAMA

## EASTERN DIVISION

RECEIVED

2017 APR 18 A 9: 06

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | | |
|---|---|---|
| **CAMERON PADGETT,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **vs.** | : | **CIVIL ACTION FILE** |
| | : | **NO.** 3:17-cv-231-WKW |
| **AUBURN UNIVERSITY;** | : | |
| **AUBURN UNIVERSITY** | : | **BRIEF IN SUPPORT OF** |
| **BOARD OF TRUSTEES;** | : | **PLAINTIFF'S MOTION FOR** |
| **JAY GOUGE in his official** | : | **EMERGENCY TEMPORARY** |
| **and individual capacity** | : | **INJUNCTION** |
| **as President of Auburn** | : | |
| **University;** | : | |
| **CHANCE CORBETT in his** | : | |
| **official and individual** | : | |
| **capacity as Director of** | : | |
| **Auburn University Public** | : | |
| **Safety Department,** | : | |
| **ANDREA CONTI-ELKINS,** | : | |
| **in her official and** | : | |
| **individual capacity as** | : | |
| **Supervisor of Student** | : | |
| **Center Reservations &** | : | |
| **James E. Foy, Information** | : | |
| **Desk, Division of Student** | : | |
| **Affairs,** | : | |
| | : | |
| **Defendants** | : | |

**1**

## BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR EMERGENCY TEMPORARY INJUNCTION

Comes now the Plaintiff in the above styled matter and files this Brief in Support of Plaintiff's Motion for Emergency Temporary Injunction showing the Court as follows:

### Facts

This is a matter involving the exercise of Plaintiff's rights as an American citizen to freedom of speech and to peaceable assembly to petition the government for redress of grievances.

Plaintiff and Auburn University entered into an agreement by which Plaintiff was granted a reservation of the University's auditorium in Foy Hall for the purpose of hosting a talk to be given by Richard Spencer, an advocate and leader of the "Alt Right." A copy of that agreement is attached to the verified Petition as "Exhibit A."

The facility is offered by Auburn University to the general public.

**2**

Plaintiff fully complied with all requirements and conditions and paid all fees imposed by Auburn University for the reservation of the facility.

Subsequent to the agreement being entered into by the Plaintiff and Auburn University African American, Jewish and immigrant advocacy groups and individuals objected to Spencer being allowed to speak and demanded that the agreement be cancelled and that the speech not take place.

In reaction to these demands and attendant publicity Auburn University issued a statement attached to the Complaint as "Exhibit B" in which Auburn stated (in reference to Spencer) "We strongly deplore his views, which run counter to those of this institution."

Subsequent to the issuance of the initial statement expressing Auburn's deploring of Spencer's views and its statement that he views run counter to Auburn's views, Auburn issued a second

**3**

statement without consultation with or notice to the Plaintiff and those planning the talk.

In that second statement (attached to the Complaint as "Exhibit C") Auburn stated, "In consultation with law enforcement Auburn canceled the Richard Spencer event scheduled for Tuesday evening based on legitimate concerns and credible evidence that it will jeopardize the safety of students, faculty, staff and visitors."

Plaintiff has filed the Petition seeking, among other things, to enforce the agreement reached with Auburn for the renting of the room and to enjoin the school from failing to comply with its contract and thereby violating his rights to Freedom of Speech and the right to assemble to petition the government for redress of grievances.

## Citation of Authorities and Argument

This case and its pleadings have had to be prepared under extreme limitations of time and schedule.

Therefore, this Brief will not be an exhaustive investigation and recitation of the law governing situations such as the one before the Court.

Indeed, counsel will admit to the Court that most of what the Court will read here comes from one recent decision of the United States Sixth Circuit Court of Appeals which appears to treat the subject thoroughly, to-wit: Bible Believers, et al. vs. Wayne County, Michigan, et al., 805 F.3d 228 (6th Circuit 2016).

That ruling appears to be directly in point on all issues concerning the rights of the respective parties to freedom of speech and the weighing of that right against the need for public order.

### General Law on First Amendment Protection of Unpopular and Controversial Speech

To begin with there has been no showing that Spencer's views are even offensive at all nor what Auburn thinks those views are.

**5**

Spencer has never been convicted of a crime.  (He has been *subjected* to a crime or crimes by the very "Anti-Fa" groups that are probably behind whatever telephoned terroristic threats Auburn may have received but he himself has never committed a crime.)

There is nothing alarming about Spencer.  There really is nothing alarming about Spencer's views on subjects such as Zionism (U.S. should stop supporting Israel and alienating the Muslims of the world), immigration (it should be stopped), race (there are significant racial differences and those differences are the result of tens of thousands of years of separate evolution under different conditions) and so on that are particularly shocking or unheard of.

The burden is on Auburn to prove that there is something dangerous in Spencer's appearance on its campus.

Auburn chose from the get-go to state that it "deplores" Spencer's views and to emphasize that Auburn's views as an institution and Spencer's views are "hostile." (Exhibit "C" to the Petition)

Nor should it matter what Spencer's views are.  Universities used to exist for the purpose of encouraging critical thinking among students and of exposing them to many different schools of thought.

It is a cliché of First Amendment judicial decisions that the government (and Auburn is a government institution) may not prohibit the expression of an idea because society finds the idea offensive or disagreeable. *Snyder v. Phelps,* 562 U.S. 443, 458, 131 S.Ct. 1207, 179 L.Ed2d 172 (2011).

It has been held that the First Amendment may even serve its purpose when it induces a climate of unrest, creates dissatisfaction with conditions as they are or even stirs people to anger. *Termiello*

**7**

*v. City of Chicago*, 337 U.S. 1,4, 69 S. Ct. 894, 93 L.Ed. 1131 (1949).

Enough has been said on that point.

Moving on to the special factual conditions of this case:

## No Actual Violence or Disturbance
## Any Violence is Projected and Conjectural

First, it is important to note that as of the writing of this Brief the day before the expected date of the hearing of the Motion there has been no act of violence committed by any person arising out of the projected meeting.

Any violence is entirely prospective and conjectural.

What is transpiring in this situation is as classic a case of "the heckler's veto" as one can get:

1. Plaintiff rents a room for a speech by Spencer.

**8**

2. A gaggle of racial identity groups with axes to grind join forces with Marxists and other radicals to express their desire that the meeting not take place and that it be shut down.

3. Auburn allegedly receives some telephone calls from cowards threatening that if the minority advocacy groups and the Marxists do not get their way, there will be hell to pay.

4. Auburn University - already having expressed its contempt for Spencer's views which it "deplores" and which it finds not to comply with its own official or semi-official views - takes advantage of an opportunity to immunize itself from minority and leftist accusations and to escape an embarrassing and stressful situation in which the most cherished bromides and clichés of modern American educational establishments are going to be held up to criticism and refutation - by cancelling the reservation and thereby blocking the gathering and the speech.

**9**

When Auburn abruptly backed out on its contract, there was no scenario at all that would justify shutting down a meeting under American law.

There were no mobs in the streets, no police cars being attacked with Molotov cocktails, not even any bricks or rocks being thrown.

The was - and is - nothing more than some cowards making terroristic threats anonymously over the telephone.

The mere tendency of speech to encourage or provoke unlawful acts is not a sufficient reason for banning it.  *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 253, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002).

[As stated above, Spencer has not committed any crimes nor can it be shown that he has ever encouraged unlawful acts.  Nothing more can be asserted by Auburn about Spencer's speech that that it might *provoke* unlawful acts by persons and groups bent on preventing him from speaking.]

**10**

There is no "clear and present danger" presented in the fact situation before the Court.

## Duties of Auburn's Police Authorities

Police officers have a *duty* to protect speakers like Spencer from the reactions of hostile audiences. *Glasson v. City of Louisville*, 518 F.2d 899, 906 (6th Cir. 1975).

A police officer has the duty not to ratify and effectuate a heckler's veto nor may he join or abet a mob intent on suppressing ideas. Instead, the police must take reasonable action to protect speakers exercising their constitutional rights from violence.

In the case before the Court now Auburn and its police authorities have not fulfilled that duty.

Instead, they have quickly capitulated to the anonymous telephone callers and strangled Plaintiff's exercise of his First Amendment rights.

**11**

The issue of the duty of police authorities to protect American citizens who are exercising their right to freedom of speech is not an academic one in this situation...nor is it an issue that will cease to exist if and when the Court requires the Defendants to comply with Auburn's contract with Plaintiff.

When the meeting takes place, the police must take steps to insure the rights of the speaker, the organizers and the audience.

From past experience the cowardly bullies who have made the terroristic threats are more often than not affiliated with a nasty movement that calls itself "the Anti-Fa."

"Anti-Fa" activists are prone to wear masks to protect their identity. By virtue of knowing that their identities will not be ascertained, the Anti-Fa are emboldened to commit acts of violence.

Counsel has had personal experience of being assaulted by a masked Anti-Fa activist and has witnessed similar behavior in November, 2016, in the District of Columbia.

**12**

On that occasion counsel spoke with the District of Columbia police and asked them to make the demonstrators committing the unlawful acts to remove their masks.

The police did not do so and the officer with whom counsel spoke said that the police were *under orders not to ask the Anti-Fa to remove their masks.*

The State of Alabama has as part of its criminal code Section 13A-11-9 which says that a person commits the crime of loitering if he, being masked, loiters, remains or congregates in a public space.

The enforcement of the anti-mask law of the State of Alabama on Anti-Fa who show up on the grounds of Auburn University is part of the duty owed by the school's police authorities to Plaintiff and those attending the meeting.

Such enforcement in all likelihood will reduce the possibility of unlawful behavior drastically.

**13**

Should Auburn and its police authorities fail to enforce the anti-mask law, then such a failure to enforce the law so as to protect the Plaintiff and those attending the meeting will constitute strong evidence of the school's breach of its duties toward those speaking at or attending the gathering.

## Application of the "3 Step Inquiry" in Free Speech Cases

Free speech cases require a three-step inquiry:

1. Is the speech constitutionally protected?

2. What is the nature of the forum?

3. Is the government's action in cutting off the speech legitimate?

*Cornelius v. NAACP Legal Defense and Education Fund, Inc.*, 473 U.S. 788, 797, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985).

All 3 questions must be decided adversely to Auburn in the case before the Court.

First:

**14**

Plaintiff's speech (or Spencer's speech) is clearly constitutionally protected.  The First Amendment offers sweeping protection to all manner of speech.  The right to freedom of speech means nothing if it is restricted to popular or conventional speech.  To escape this authority Auburn must show that the speech falls under an excepted category like advocacy of immediate violence, "fighting words" and so on.  However, none of those exceptions apply here.

Second:

The nature of the forum is a room offered to the general public at a state chartered, funded and controlled university.

Auburn is not a private school.  It has no right to proscribe speech it does not approve.  It really has only a very limited room in which to approve or disapprove speech.

Third:

Auburn's act of cancelling the meeting based on some telephone threats of future violence cannot be deemed legitimate.  If the

**15**

anonymous telephone calls were to be deemed a legitimate cause for preventing the meeting from taking place, such a ruling would empower cowardly troublemakers of every stripe and persuasion to shut down meetings and shut up speakers by simply going to a pay phone and calling in a threat. American's First Amendment right to freedom of speech under such a scenario would be a sad joke.

## Plaintiff's Right to an Injunction

Plaintiff will be irreparably harmed if an injunction is not granted. Furthermore, as argued below, the Plaintiff's has a likelihood of ultimate success in the litigation.

A loss of First Amendment freedoms for even minimal periods of time unquestionable constitutes "irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

Where a plaintiff alleges injury arising from a rule or regulation that directly limits free speech, the irreparable nature of the harm may

be presumed. *Bronx Household of Faith v. Board of Education of the City of New York*, 331 F.3d 342 (2d Circuit, 2003).

## Conclusion

Plaintiff is entitled to an order of the Court requiring Auburn to honor its contract and to permit the meeting to take place as scheduled without further obstruction or annoyance. Furthermore, the Order should remind the police authorities of Auburn University of its duty to protect Plaintiff, the speaker and those in attendance from unlawful behavior of those hostile to the message of the meeting.

Respectfully submitted this 17th day of April, 2017.

SAM G. DICKSON, Attorney at Law

P. O. Box 55123
Atlanta, Ga. 30308
Tel.: 404-932-1405
Email: sdicksonlawandjustice@gmail.com

**17**